UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDRES F. CABEZAS,

    *Plaintiff*,

v.

FEDERAL BUREAU OF PRISONS, et. al,

    *Defendants*.

Civil Action No. 1:20-cv-02484 (CJN)

**MEMORANDUM OPINION**

Andres Cabezas seeks records from the government under the Freedom of Information Act. Both sides have moved for summary judgment. For the following reasons, the Court denies Cabezas's motion and grants in part and denies in part Defendants' motion.

## I. Background

Cabezas claims that the Department of Justice's Office of Professional Responsibility (OPR) and the Federal Bureau of Prisons (BOP) never responded to FOIA requests he submitted to them, and that the Department of Justice's Executive Office for United States Attorneys (EOUSA), while providing him some information, has not conducted a sufficiently thorough search of its records. *See generally* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 37. OPR says that it did respond to Cabezas's request, and that in any event, it is not obligated to provide Cabezas the requested information; BOP says that it never got a request from Cabezas; and EOUSA defends the adequacy of its search. *See generally* Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 38.

## II. Legal Standards

FOIA requires "federal agencies to make their records available to the public upon request." *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015); *see* 5 U.S.C. § 552(a)(3).

1

An agency must conduct a reasonable search for responsive records. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). But agencies may withhold from disclosure information that falls within one of nine enumerated exemptions. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021); *see* 5 U.S.C. § 552(b). An agency carries the burden of proving the applicability of an exemption and showing either a foreseeable risk of harm or that the law prohibits disclosure. *See Petroleum Info. Corp. v. Department of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (noting that district courts must review *de novo* the agency's justification for non-disclosure).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An agency may attempt to meet its summary judgment burden through a declaration or an affidavit, but conclusory declarations or affidavits "that merely recite statutory standards or are overly vague or sweeping" will not suffice. *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009).

### III. Analysis

**A. The OPR FOIA Request.**

The government makes two sets of arguments as to why OPR did not have to respond to Cabezas's FOIA request: Cabezas failed to exhaust administrative remedies, and, in any event, FOIA exemptions excuse OPR from producing the requested documents.

1. As to the first argument, the government has not shown that Cabezas failed to exhaust administrative remedies. FOIA requires exhaustion of the administrative appeals process before an individual may seek judicial review of an agency's denial of a request for documents. *Ogelsby*, 920 F.2d at 61-62. An individual who does not actually exhaust his administrative remedies can still exhaust them constructively if the agency fails to respond to his request by the statutory deadline. *Id.* at 62; 5 U.S.C. § 552(a)(6)(C)(i). The statute gives agencies 20 business days. 5 U.S.C. § 552(a)(6)(A)(i). But even after those 20 days have passed, the story is not over: "If the agency responds to the request after the twenty-day statutory window, but before the requester files suit, the administrative exhaustion requirement still applies." *Jud. Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003). The question here is whether Cabezas received a response from OPR before he filed this suit.

And on that question, we have a classic factual dispute. Cabezas says he never received any response from OPR. Pl.'s Mot. at 4-5; Cabezas Decl. at ¶¶ 32, 46, ECF No. 33-2. OPR says it sent one before Cabezas filed this action. Defs.' Mot. at 4; McCarty Decl. at ¶ 7, ECF No. 38-1. This he-said, agency-said dispute constitutes "a genuine dispute of material fact." *See Pinson v. DOJ*, 69 F. Supp. 3d 125, 131-32 (D.D.C. 2014) (explaining that when "a plaintiff attests that he never received the letter that the agency allegedly mailed in response to a FOIA request," "a court may deny summary judgment to the agency"). To be sure, an OPR declarant says she sent Cabezas a response and attaches a copy of the response letter. McCarty Decl. at ¶ 7; Ex. B, McCarty Decl., ECF No. 38-2. But in light of Cabezas's declaration, that is not the sort of overwhelmingly "one-sided" evidence that would justify summary judgment on this contested issue. *See Jones v. DOJ*, 576 F. Supp. 2d 64, 66 (D.D.C. 2008) (quoting *Anderson*, 477 U.S. at 252). The Court thus cannot grant summary judgment to either side on the exhaustion issue.

2. The government has also failed to show that a FOIA exemption justifies OPR's withholding of responsive records. Defendants point to FOIA exemptions 6 and 7(C). Defs.' Mot. at 5. Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) in turn excuses from disclosure "records or information compiled for law enforcement purposes" if their production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

The Court starts and ends with Exemption 7(C). Cabezas sought misconduct-, discipline-, and ethics-related records regarding certain law enforcement officers. Ex. A, McCarty Decl., ECF No. 38-2. Under Exemption 7(C), OPR bears "the burden of explaining why disclosure of any records would categorically be 'reasonably . . . expected to constitute an unwarranted invasion of' the officers' personal privacy, when balanced against the public interest in disclosure.'" *Bartko v. DOJ*, 898 F.3d 51, 66 (D.C. Cir. 2018). OPR refused even to confirm or deny the existence of responsive records in what is called a "*Glomar*" response. *Id.* at 63; Defs.' Mot. at 5.

With this *Glomar* response, OPR has failed to satisfy its obligation to "measure" the public interest in disclosure and "weigh" it against the privacy interests at stake. *Bartko*, 989 F.3d at 66. As the Court of Appeals has stated, "OPR cannot issue a blanket proclamation that a loss of privacy would be 'unwarranted' without considering whether there is a public interest that might well warrant it." *Id.* But that is exactly what OPR has done here. OPR offers nothing more than conclusory claims regarding the public interest, simply asserting that "disclosure of the files would not significantly contribute to the public's understanding of the operations or activities of the government." Defs.' Mot. at 8. Cabezas, in contrast, puts forward evidence that at least some of the requested records may provide information to the public about how at least one FBI agent

conducted child pornography investigations in a questionable manner.  *See* Ex. B, Pl.'s Statement of Undisputed Material Facts, ECF 37-1.

OPR also "ignores altogether its obligation to specifically identify the privacy interest at stake." *Bartko*, 898 F.3d at 66.  OPR contends generally that "even to acknowledge the existence of records related to claims of misconduct by an individual would constitute a clearly unwarranted invasion of personal privacy." Defs.' Mot. at 8.  But the privacy interests at stake when disclosing OPR records "can vary based on many factors, including frequency, nature, and severity of the allegations." *Bartko*, 898 F.3d at 66*.*  For example, the seriousness of the officers' and agents' privacy interests might vary depending on whether the records show complaints that were "substantiated" as opposed to "unsubstantiated," "serious" as opposed to "trivial," and "repeated" as opposed to singular.  *See id.* (citation omitted).  That is particularly true where, as here, the government has itself already acknowledged an investigation and OPR letter regarding at least one of the agents.  ECF No. 33-5.

In sum, OPR has failed to establish the applicability of Exemption 7(C) because it has not "establish[ed] that there would be a single answer to every balancing of interests involving" each of the requested records.  *Id.*; *see CREW v. DOJ*, 854 F.3d 675, 683 (D.C. Cir. 2017) ("Because the myriad of considerations involved in the Exemption 7(C) balance defy rigid compartmentalization, per se rules of nondisclosure based upon the type of document requested, the type of individual involved; or the type of activity inquired into, are generally disfavored."). And OPR's inability to demonstrate "an unwarranted invasion of personal privacy" under Exemption 7(C) dooms its invocation of Exemption 6 as well because "Exemption 6 requires an even stronger demonstration of a privacy interest than Exemption 7(C)." *Bartko*, 898 F.3d at 67.

The Court thus cannot grant summary judgment to either party regarding the OPR FOIA request.

**B.  The BOP FOIA Request.**

Turning to BOP, a "federal agency has no obligation to respond to a FOIA request it has not received." *Kanaya v. ATF*, 284 F. Supp. 3d 1, 2 (D.D.C. 2018).  If BOP did not receive Cabezas's request, the agency is in the clear.  If BOP did receive it, the agency owes him a response.

BOP claims that it never received the request and cannot locate it now even after a thorough search.  *See* Defs.' Mot. at 15-17; Blow Decl. at ¶¶ 12-15, ECF No. 38-5.  Cabezas responds with a declaration stating that on May 28, 2019 he sent a FOIA request to the BOP Southeast Regional Office in Atlanta, Georgia at an address with a 30031 zip code and included with the request a certified mail tracking number of 70812290000116287688.  Cabezas Decl. at ¶¶ 24-26.  His copy of the request shows the same tracking number.   ECF 2 No. 2-1 at 1, 2.  His wife says in her own declaration that she saw the USPS tracking website show the package's arrival in Atlanta on June 4, 2019.  Villegas Decl. at ¶ 7, ECF 33-3.  And she took a screenshot that shows that a package with the same tracking number was delivered to a 30031 zip code in Atlanta on June 4, 2019.  *See* ECF No. 22-1 at 4; Villegas Decl. at ¶ 7, ECF No. 33-3; Pl.'s Mot. at 3.

In light of this evidence, the Court cannot grant summary judgment to either side.  In particular, Cabezas has submitted evidence sufficient to create a factual dispute about whether BOP received his request, but that evidence (including the unclear screenshot on which he relies) is not sufficient to establish that BOP in fact received it.  Of course, either party could have obviated (and could in the future obviate) the need for the Court to resolve this question—BOP

6

could have simply responded to the FOIA request Cabezas identified in this litigation, and Cabezas could have simply resubmitted that request.

### C. The EOUSA FOIA Request.

Finally, the EOUSA request. This time, the parties agree that the agency received Cabezas's request and that Cabezas received the agency's response. The agency even produced some records. The dispute here is over whether the agency adequately searched for all responsive records. In particular, Cabezas asked for (among other things) "the summary and extensive log information" from January 8, 2018 to February 6, 2018 of the "notice (or advertisement) of forfeiture" that was posted on the government's forfeiture website regarding his property. Ex. A, Cain Decl., ECF No. 38-4. The government ultimately provided Cabezas both a summary log of the days on which the advertisement of forfeiture was posted as well as the actual postings from each day in the requested time period. See Ex. B, Cain Decl., ECF No. 38-4; Ex. 1-f, ECF No. 33-4.

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. *Oglesby*, 920 F.2d at 68; *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015). A plaintiff can defeat an agency's motion for summary judgment if "a review of the record raises substantial doubt" as to the adequacy of the agency's search, "particularly in view of well-defined requests and positive indications of overlooked materials." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (cleaned up). But the "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." *Id.* at 316 (cleaned up).

Cabezas claims that there is "additional log information" that the agency has not found and released. Pl.'s Mot. at 7. Cabezas points to two pieces of evidence in support of his theory, but

7

neither suggests an inadequate search. Both come from the log the government provided him which notes each day between January 8, 2018 and February 6, 2018 on which a notice regarding his forfeited property was posted online. Cabezas first points out that the log states that "[a]dditional log information is available and kept in the archives for 15 years after the asset has been disposed." Pl.'s Mot. at 7; Ex B, Cain Decl., ECF No. 38-4. Cabezas views this as proof that there is a more information available elsewhere. But that is speculative at best given the number of things outside the scope of Cabezas's FOIA request to which that language might refer. Cabezas also latches onto the fact that the log describes itself as "a summary report." Cabezas surmises that when there is a "summary" report, there must also be a more detailed report. Mem. in Opp. to Defs.' Mot. for Summ. J. at 9, ECF No. 40. But beyond that supposition, there is no evidence of that being the case here. Indeed, Cabezas does not explain what additional information a more detailed log could or would provide beyond the dates on which a notice was posted and the content of each notice—all information Cabezas has already been given.

As a result, the Court grants Defendants' motion for summary judgment as to the EOUSA FOIA request and denies Cabezas's.[1]

---

[1] Cabezas also asks the Court to enjoin alleged OPR and BOP policies or practices of ignoring inmates' FOIA requests. *See* Pl.'s Mot. at 4; Am. Compl. at 5. But Cabezas does not have "standing to pursue [his] policy-or-practice claims" because he has not demonstrated that he has "any outstanding FOIA requests (other than the requests challenged in th[is] litigation) that are likely to implicate the alleged policies and lead to future injuries." *See National Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 92-93 (D.D.C. 2013) (citations omitted). Also cutting against any threat of future injury from the alleged policies is the fact that Cabezas has provided only "a nebulous assertion of the existence of a policy" based on his and one other inmate's experiences. *See id.* at 91; Pl.'s Mot. at 4.

## IV. Conclusion

For these reasons, Cabezas's Motion for Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. An order will issue contemporaneously with this opinion.

DATE: September 28, 2023

CARL J. NICHOLS
United States District Judge